**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**KRISTINA HUFFMAN** **PLAINTIFF**

**VS.** **NO. 4:20-cv-01296-BRW**

**ASSOCIATED MANAGEMENT LTD, *ET AL.*** **DEFENDANTS**

# ORDER

Pending is Plaintiff's Motion for Costs and Attorneys' Fees (Doc. No. 12). Defendants have responded.[1] For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART. Plaintiff's lawyers ("SLF"[2]) are entitled to $2,250 in lawyers' fees and $400 in costs from Defendants.

## I. BACKGROUND

Plaintiff filed this FLSA case on October 30, 2020.[3] The parties settled liability in June of 2021.[4] With the parties unable to agree on lawyers' fees, Plaintiff filed a motion seeking $13,801.70 in fees and $500 in costs.

## II. DISCUSSION

The Fair Labor Standards Act allows for reasonable lawyers' fees upon successful litigation of the claim.[5] Congress included the fee-shifting language so citizens would have

---

[1]Doc. No. 15.

[2]Sanford Law Firm.

[3]Doc. No. 1.

[4]Doc. Nos. 8, 9.

[5]29 U.S.C.A. § 216 ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

access to the courts to enforce their federal rights.[6] While that concept is good in theory, it has become apparent that, in practice, lawyers' fees are the driving force in many FLSA cases.[7]

The lodestar method is the "most useful starting point for determining the amount of a reasonable fee."[8] It requires the court to consider "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[9] Then, the court should "adjust the fee upward or downward on the basis of the results obtained."[10] "[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."[11] "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys."[12]

---

[6]*Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2013 WL 1704722, *5 (D. Neb. April 18, 2013) (The "purpose of the FLSA attorney's fee provision is to insure (sic) effective access to the judicial process," and "encourage the vindication of congressionally identified policies and rights.").

[7]See *Jones v. RK Enterprises of Blytheville, Inc.*, No. 3:13-CV-00252-BRW, 2016 WL 1091094, at *6 (E.D. Ark. Mar. 21, 2016), aff'd, 672 F. App'x 613 (8th Cir. 2016) ("The fact that a case involves fee shifting does not open the door to unwarranted billing that would otherwise never be incurred. Additionally, a lawyer is still required to do a cost-benefit analysis when considering whether to proceed to trial or settle a case, just as lawyer in a non-fee-shifting case would."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (holding that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction" after finding that the plaintiff "leveraged a small sum as a stepping-stone to a disproportionately large award of attorney's fees").

[8]*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[9]*Id*.

[10]*Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003).

[11]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551(2010) (emphasis in original).

[12]*Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (internal quotations omitted).

"An attorney[s'] fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client."[13] Hours that were not "reasonably expended" must be excluded.[14] "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[15]

**A. Requested Hourly Rates**

SLF requests the following hourly rates in this case: $383 (Josh Sanford); $300 (Anna Stiritz, Vanessa Kinney); $285 (Steve Rauls); $240 (Stacy Gibson); $220 (Thomas Odom); $210 (Courtney Lowery); $150 (Samuel Brown); $75 (law clerk); and $60 (staff).[16]

According to Mr. Sanford's affidavit, the rates are consistent with lawyers in the area who work on similar cases. I disagree. Recently I noted that "there appear to be just as many cases rejecting Mr. Sanford's $325 an hour rate as there are approving it."[17] In fact, just a few months ago, Judge Baker held that $325 an hour was too high.[18] Undeterred, Mr. Sanford has

---

[13]*Morales,* 2013 WL 1704722, at *7 (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989)).

[14]*Hensley*, 461 U.S. at 434.

[15]*Id.*

[16]Doc. No. 45.

[17]*Burton v. Nilkanth Pizza Inc., et al*, No. 4:19-CV-00307-BRW, Doc. No. 48 (E.D. Ark. Aug. 24, 2020) (citing cases).

[18]*Smith v. OM Purshantam, LLC, et al.*, No. 4:18-CV-00797-KGB, 2021 WL 1239468, at *3 (E.D. Ark. March 31, 2021) ("Second, defendants claim that Ms. Smith has proposed hourly rates that are excessive and unjustified. The Court agrees. Mr. Sanford's request for $325.00 per hour has repeatedly been rejected by judges in both the Eastern and Western Districts of Arkansas.").

increased his rate to $383 an hour, an increase of over 15% than the previous $325-rate that repeatedly has been deemed too high. Additionally, the rates appear to be entirely arbitrary and unreliable. For example, in other cases litigated by this firm during the same time period, the rates were lower:

| **Attorney** | **Hourly Rate Claimed Here** | **Hourly Rate Contemporaneous Cases** |
|---|---|---|
| Josh Sanford | $383 | $325 |
| Anna Stiritz | $300 | $250 and $275[19] |
| Vanessa Kinney | $300 | $250[20] |
| Steve Rauls | $285 | $225[21] |
| Thomas Odom | $220 | $175[22] |
| Courtney Lowery | $210 | $100 and $150[23] |
| Samuel Brown | $150 | N/A |

I am not the only judge who has noticed this issue. In August 2020, Judge Brooks, of the Western District of Arkansas, held that "[j]ust a few months ago, however, the Sanford Law Firm submitted invoices requesting $125 an hour for work done by Ms. Matlock. No explanation is given for why Ms. Matlock's rate should have increased 50 percent since June."[24]

---

[19] *Vines, et al v. Welspun Pipes Inc, et al*, No. 4:18-cv-00509-BRW; *Whitehead v. Conway Cycle Shop LLC, et al*, No. 4:20-cv-00234-BRW.

[20] *Bryan v. Mississippi County Arkansas*, No. 3:18-cv-00130-DPM.

[21] *Beasley*, No. 4:19-CV-00471-JM; *Whitehead*, No. 4:20-cv-00234-BRW.

[22] *Whitehead*, No. 4:20-cv-00234-BRW.

[23] *Whitehead*, No. 4:20-cv-00234-BRW; *Oden v. Shane Smith*, No. 4:19-cv-00693-BRW.

[24] *Hill-Smith v. Silver Dollar Cabaret, Inc*., No. 5:20-CV-5051, 2020 WL 4741917, at *4 (W.D. Ark. Aug. 14, 2020). See also, *Smith*, 2021 WL 1239468, at *3 ("Further, SLF's billing records indicate that, in May 2019, Mr. Sanford's hourly rate increased from $225.00 an hour to $325.00 an hour, a 44 percent increase. Around that same time, Mr. West's rate went from

SLF provided no evidence of what it has ever charged an actual fee-paying client.[25] It relies on hourly rates previously awarded by courts, but "[p]rior awards are not direct evidence of market behavior; the court is not a legal souk."[26] That's because most lawyers would provide only the previously-awarded rates that support a higher rate, which, once again, is what happened here.

SLF contends that "[b]ecause Mr. Sanford is reducing his hours, voluntarily, by 37.29% and Ms. Lowery is reducing her hours, voluntarily, by 15.74%, this Court should not for a minute entertain reducing the hourly rates."[27] I disagree. If you mark-up the fair-market-value of goods by 50% and then give a 25% "discount," your price is still inflated by 25%. It's the same situation here.

In correspondence to Defendants, Mr. Sanford refers to a recent case –*Rodriguez v. Superior Real Estate Sols*.[28] – where he was awarded his new, <u>increased</u> rate. His email noted that "[T]oday Judge Marshall appears to have given me about $380 per hour if I am reading the order correctly. So it may be that there's upward movement on attorney fees recently. If so, that

---

$150.00 an hour to $225.00 an hour, a 50 percent increase. Neither increase was explained. Had Ms. Smith's counsel not been retained on a contingency basis, they would have been required to notify their client of the rate increases and include the new rates in their billing.").

[25]*McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("Sindel's regular hourly billing rate provides a useful starting point for determining a reasonable fee. We have said that where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award."); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) ("What Still charges clients is powerful, and perhaps the best, evidence of his market rate.").

[26]*Dillard*, 213 F.3d at 1355.

[27]Doc. No. 13.

[28]No. 4:19-cv-405-DPM, 2021 U.S. Dist. LEXIS 81981, at *1 (E.D. Ark. Apr. 29, 2021).

would mean we'd be asking for more than the $9500 I mentioned."[29] What Mr. Sanford neglected to tell opposing counsel is that, in *Rodriguez*, the defendant did not object to the hourly rates. He also failed to mention that a few weeks before Judge Marshall's ruling, Judge Baker held that $325 an hour was too high.[30]

SLF also contends that its rates are appropriate because this case was taken on a contingency-fee basis. Mr. Sanford's affidavit reads:

> To be clear, the "contingency" fee arrangement between Plaintiffs and Sanford Law Firm is not a contingency fee in the traditional sense whereby an attorney takes a portion of the plaintiff's recovery. Rather, Sanford Law Firm relies solely on the fee-shifting provisions of the FLSA and AMWA to recover their fees in this case.[31]

First, as has been pointed out before, this sworn statement is contradicted by SLF's standard contingency fee agreement, which says that if the lawyers are awarded lawyers' fees from a defendant, the fees will be "paid to the attorney in addition to the contingent fee . . . ."[32] Yet, I do not know whether this agreement is ever actually enforced or used in this case. Second, while this is a factor, it has much less weight in an FLSA action than it does in a civil rights case. Both types of cases are intended to vindicate rights protected by Congress, but the length of litigation is much higher in civil rights cases, while the odds of success are much lower. Seasoned lawyers, such as in this case, should be able to quickly assess the merits of the claims and, typically, find resolution with the opposing counsel. The point is, although there is a risk in FLSA cases, it is usually much smaller than other fee-shifting cases.

---

[29]Doc. No. 15-1.

[30]*Smith*, 2021 WL 1239468, at *3.

[31]Doc. No. 12-2.

[32]*Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *3 (E.D. Ark. June 9, 2020).

SLF asserts that the "hourly rates charged by SLF are reasonable and below the national average for complex litigation."[33] This FLSA case was not complex litigation. Furthermore, most of Mr. Sanford's $383-an-hour legal work involved only "examination of emails" – the same emails that went to other lawyers in the firm. Clearly this is not complex legal work.

SLF also claims that "t]he most natural comparators to the attorneys of Sanford Law Firm are practitioners at national firms that concentrate on employment law matters."[34] SLF's reliance on the national average is contrary to Eighth Circuit law.[35]

Finally, there appears to be no shortage of lawyers willing to take these cases or evidence that they take away from the focus on other cases. In the past three years, 375 FLSA cases have been filed in the Eastern District of Arkansas. Notably, SLF has not argued that taking this case precluded other employment.

Based on a review of the submission and my knowledge of the local prevailing rate, I find that the reasonable hourly rates are:

| Attorney | Hourly Rate |
| --- | --- |
| Josh Sanford | $250 |
| Anna Stiritz | $250 |
| Vanessa Kinney | $175 |
| Steve Rauls | $175 |
| Thomas Odom | $125 |
| Courtney Lowery | $125 |
| Samuel Brown | $125 |

[33]Doc. No. 13.

[34]Doc. No. 12-2.

[35]*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014) ("A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.").

**B. Hours Expended**

Now, I must consider the reasonableness of the hours expended. After conducting a self-audit, SLF seeks reimbursement for 68.6 hours of work. Although SLF removed some of the unnecessary oversight-billing, there is still plenty being claimed. As I[36] and many other judges have pointed out before, SLF can engage in a "collaborative approach" involving constant oversight by a senior lawyer, but it cannot expect (nor should it ask) Defendants to pay for the practice since it adds unnecessary hours to the bill. Because no fee-paying client would compensate SLF for this practice, a defendant in a fee-shifting case should not be expected to either. Yet, SLF continues to submit records replete with the practice, expecting the courts to do the line-item audit. It seems impossible, but maybe all of the previous rulings have not set it out clearly enough. Below are a few:

Judge Brooks (WDAR): "The Sanford Law Firm may choose to have Mr. Sanford personally oversee every aspect of run-of-the-mill motion practice requiring no court appearance, but it will not be permitted to pass the associated costs of doing so on to Defendants."[37]

"Although the law firm has admittedly adopted a collaborative practice wherein more experienced attorneys mentor the more junior attorneys, *see id.*, it does not necessarily follow that the time spent by the senior attorneys mentoring Mr. Hoyt should have reasonably been passed on to the client and claimed in this fee request, nor does it follow that nine separate

[36] *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *6 (E.D. Ark. June 9, 2020) ("SLF can disagree with whether overstaffing and micro-managing cases is a reasonable business practice, but defendants should not pay for the costly practice. It appears to me that the only way to make the point that SLF will no longer be compensated for this inefficient practice is to impose a significant reduction in fees.").

[37] *Mya Hill-Smith v. Silver Dollar Cabaret, Inc., et al.*, No. 5:20-CV-5051; 2020 WL 4741917, at *3 (W.D. Ark. Aug. 14, 2020).

| | |
|---|---|
| | attorneys should have billed time to this rather uncomplicated wage-and-hour case."[38] |
| Judge Moody (EDAR) | "The time records are replete with instances of objectionable billing practices, including an excess of intraoffice communications, duplicate document reviews by multiple lawyers, billing at lawyers' rates for clerical work, etc. The Court will not hold Defendants responsible for these billing practices."[39] |
| Judge Marshall (EDAR) | "Involving two lawyers also ran the bill up some with needless coordination."[40] |
| | "[S]ix lawyers and a law clerk" is excessive and "too much time was spent on conferences, meetings, call, and emails between lawyers."[41] |
| Judge Chestney (WDTX) | "Plaintiff's counsel assigned five lawyers to work on this case at various times, and this led to inefficiencies and duplication of work. Plaintiff's counsel has been warned about this type of duplicative billing in the past."[42] |
| Judge Hickey (WDAR) | "[T]here are multiple instances of duplicative work performed and excessive intra-firm communication in the itemized list provided by Plaintiff's counsel."[43] |
| Judge Holmes (WDAR) | "These excessive intrafirm conferences and over staffed cases only serve the attorneys' invoices and take away |

[38] *Murdock v. McNair*, No. 5:17-CV-05225, 2018 WL 6314569, at *1 (W.D. Ark. Dec. 3, 2018).

[39] *Beasley v. Macuil's Tire & Serv. Ctr., LLC*, No. 4:19-CV-00471-JM, 2020 WL 3472556, at *2 (E.D. Ark. June 25, 2020).

[40] *Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012).

[41] *Bryan v. Mississippi County Arkansas*, No. 3:18-CV-00130-DPM, Doc. No. 68 (E.D. Ark. May 12, 2020).

[42] *West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *6 (W.D. Tex. Dec. 3, 2019).

[43] *Hays v. French Quarter Partners, LLC*, No. 6:15-CV-6065, 2016 WL 6518637, at *3 (W.D. Ark. Nov. 1, 2016).

| | |
|---|---|
| | from time that could be spent protecting the client's legal interests."[44] |
| | "[T]ime spent on intra-firm communications was unnecessary and excessive" and much of the communication was "oversight" and "education" of a new lawyer."[45] |
| Judge Miller (EDAR) | "SLF's billing spreadsheet shows that eleven different lawyers, as well as five support staff members, worked on this fairly routine case . . . . SLF may consider it prudent to tightly manage its associates, but defendants will not be forced to bear the costs of that approach."[46] |
| Judge Baker (EDAR) | Noting that "Ms. Smith's counsel assigned 14 individuals to work on this case at various times and billed for 11 of them, including 7 lawyers . . . This may have led to inefficiencies and duplication of work. Ms. Smith's counsel has been repeatedly warned about this type of duplicative billing in the past." Ultimately Judge Baker reduced hours for "Case Management" and "In-House Conference" by 75%.[47] |
| Judge Bemporad (WDTX) | "In addition to duplication of work, having fifteen time keepers on a single case resulted in many charges for intraoffice conferences to discuss various assignments. Plaintiffs' counsel has been warned about this type of duplicative billing in the past."[48] |

---

[44] *Cook v. Beemac Foods, LLC*, No. 2:18-CV-02155, 2019 WL 2418753, at n.2 (W.D. Ark. June 10, 2019).

[45] *Burchell v. Green Cab Co., Inc.*, No. 5:15-CV-05076, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016).

[46] *Dean v. Bradford Estates*, No. 4:19-CV-00748-BSM, 2020 WL 8642227, *2 (Nov. 24, 2020).

[47] *Smith*, 2021 WL 1239468, at *3.

[48] *Furlow v. Bullzeye Oilfield Servs.*, LLC, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *7 (W.D. Tex. Jan. 3, 2019), report and recommendation adopted, No. 5:15-CV-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019).

There were ten time keepers in this case and seven of them were lawyers.[49] The records reveal that associate Courtney Lowery was the lead lawyer on this case.[50] In fact, the records note that Ms. Lowery was the primary lawyer: "Receipt and review of email from [Courtney Lowery] re current D in her case, update of damages, strat[egy] going forward."[51] Yet, there were over sixty-five "conferences" among co-counsel, not including those that are not being claimed by SLF. Considering Ms. Lowery's assert hourly rate ($210) and the fact that most entries were 0.1, this comes out to at least $1,365.00 for conferencing with co-counsel. This is far too much oversight for a lawyer who has been practicing over two years, and, who, according to Mr. Sanford's affidavit, "has become an expert in screening and drafting FLSA claims and has already obtained favorable settlements for several clients."[52] As has been pointed out time and again, the random involvement of all of the lawyers and the constant oversight by the senior lawyer are inefficient, unnecessary, and unreasonable.

Judge Holmes, of the Western District of Arkansas, noted:

> [SLF has] appeared before the undersigned in numerous FLSA actions. In many of these cases, the Court has been called on to review a settlement agreement, and to approve or deny attorney's fees and costs after reviewing work claimed by Sanford or Rauls. This experience has left the Court with a strong impression . . . [that] most of [SLF's] litigation efforts are . . . directed toward obtaining a settlement for Plaintiffs that includes a large fee award for attorneys appearing from the Sanford Law Firm.[53]

---

[49]However, Plaintiff voluntarily zeroed-out the work of one lawyer and staff, for a total reduction of 1.9 hours.

[50]Samuel Brown got more involved after the case had progressed.

[51]Doc. No. 12-1 (emphasis added).

[52]Doc. No. 12-2.

[53]*White v. Gregory Kistler Treatment Ctr., Inc.*, No. 2:16-CV-02259, 2018 WL 3186976, at *4 (W.D. Ark. June 28, 2018) (internal citations omitted).

It was true when Judge Holmes mentioned it and continues to be true, despite repeated admonitions by nearly every judge in the Eastern and Western Districts of Arkansas.

There are other issues to address:

**Unsuccessful Issues** – SLF seeks compensation ($585.90) for work on a Motion to Recuse, which was denied. This is not the first time SLF has requested reimbursement for unsuccessful issues, so I do not understand why it continues to submit frivolous requests.[54] Additionally, SLF filed the motion to recuse despite recognizing in an email to opposing counsel that it "expect[s] this motion to be denied as well . . . ."[55]

**Higher Billing** – On a few occasions when there was double-billing, the higher attorney rate was requested when the lower attorney rate was not.[56]

**Motion for Lawyers' Fees** – SLF requests over 9.5 hours for drafting its fee petition. On top of that, this relatively menial task is performed by the lawyer with the second-highest hourly rate ($300) in this case. This is unreasonable. At most (assuming billing records are contemporaneously kept) this task should take a hour or two and could be performed by a much cheaper lawyer. Additionally, SLF has previously been put on notice that this is too much time.[57]

---

[54]I note that SLF's self-audit removed all the time for staff, an issue that has been discussed before. However, it did not remove the time for unsuccessful issues.

[55]Doc. No. 15-1.

[56]Doc. No. 12-1 at 8/21/20, 11/16/20, and 4/12/21.

[57]*Burton*, 2020 WL 4939470, at *5 ("SLF asserts that the fees petition took 5.5 hours to draft. This is too much time considering that it was SLF's standard motion and affidavit. Accordingly, SLF will be awarded only two hours for this work.").

**Excessive Time** – Defendant notes that "16.7 hours ($3,500 in fees) related to . . . pre-litigation review and analysis" is excessive.[58] I agree. Additionally, 10.6 hours on a damages calculation is too much. Moreover, as Defendants pointed out, it is odd that so many hours accumulated after "SLF claimed to have calculated Plaintiff's damages as early as September 14, 2020" when it made a settlement demand.[59] Spending 24.1 hours for "Discovery Related" matters is unreasonable in this straight-forward case. Finally, 8.6 hours for "client communication" is excessive, since there was only one client and this case was not complex.

**Inconsistent Requests** – In its response, Defendants raised the following issue:

> It is also indisputable that SLF retroactively inflated its billings prior to submitting its fee petition. For example, on April 29, 2021, Josh Sanford provided defense counsel with a summary of SLF's billings through April 27, 2021, which reflected 63.6 hours and $9,387.00 billed through April 27, 2021.6 Curiously, the Billing Spreadsheet submitted in support of SLF's fee petition reflects 68.7 hours and $11,931.90 billed through April 27, 2021. Similarly, on July 1, 2021, Courtney Lowery sent defense counsel an email with a billing summary showing 76.3 hours and $13,643.80 billed through July 1, 2021.8 SLF's Billing Spreadsheet now shows 86 hours and $16,134.00 in fees billed through June 30, 2021.[60]

This is odd. It also supports my finding that SLF fee request excessive, inflated, and unreliable.

**Unclear Billing** – Excluding the entries removed during the self-audit, there still are over fifty entries where the description of the work performed is entirely redacted. Typically it involves "client communication." However, I have no idea whether the communication was reasonable or necessary to advance the case. Since some were removed and others were not, I can only presume that some were unreasonable. Additionally, surely not every contact with the client involved a privileged communication.

---

[58]Doc. No. 15.

[59]*Id.*

[60]*Id.*

**Improper Billing** – SLF seeks reimbursement for a "Annotated Complaint" which was never filed.[61] This should not be shifted to Defendants.

**Reviewing Own Filings** – At least once SLF billed to review its own filings.[62] This would not be billed to a client, and it will not be billed to Defendants.

**Other Considerations** – This case was not complex. It did not present difficult legal questions and SLF did not assert that the case took it attention away from other cases.

**Limited Success** – When it comes to assessing reasonable fees, the Supreme Court has noted that "the most critical factor is the degree of success obtained."[63] SLF achieved a liability award ($2,500) for its client, but this was a little less than 60% its demand of $4,421.[64]

**Summary** – All of the mentioned billing issues (as well as some mentioned in Defendants' response that are not discussed in this Order, such as excessive time on "Complaint/Summons/Service," duplicative billing, *etc.*) result in a fee request that is excessive, unreasonable, and unreliable. "When a party submits a fee petition, it is not the 'opening bid in the quest for an award.'"[65]

The FLSA requires a court to award a "reasonable" fee. Black's Law dictionary defines reasonable as: "Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view."[66] If you trim away all the fat, Courtney Lowery was the primary

---

[61]Doc. No. 12-1 at 11/24/20.

[62]*Id*. at 10/30/20.

[63]*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[64]Doc. No. 15-1.

[65]*Clemens v. N.Y. Central Mutual Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018) (quoting *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993)).

[66]Black's Law Dictionary (Deluxe) 1265 (6th ed. 1991).

lawyer on this case, and she claims 16 hours of work (but even those hours include some of the issues mentioned above). At the reasonable hourly rate of $125, the total is $2,000. Add in one hour of oversight at the senior lawyer's rate, and the total is $2,250. All things considered, $2,250 is the "fair, proper, [and] just" lawyers' fee in this case, and that is what SLF is awarded.

**D. Costs**

SLF asserts that it incurred $500 in costs, for a private process server and the filing fee. However, the $100 cost for a private process server is not recoverable under 28 U.S.C. § 1920.[67] Additionally, as Defendants points out, it waived service, a fact supported by a billing entry on October 30, 2020.[68] Plaintiff is entitled to costs of $400.

**E. Guidance**

I invite Plaintiff's lawyers' attention to the following: Wealth gotten by vanity shall be diminished; but he that gathereth by labour shall increase. – Proverbs 13:11 (KJV).

**CONCLUSION**

For the reasons above, Plaintiff's Motion for Costs and Attorneys' Fees (Doc. No. 12) is GRANTED IN PART and DENIED IN PART. SLF is entitled to $2,250 in lawyers' fees and $400 in costs from Defendants.

IT IS SO ORDERED this 22nd day of July, 2021.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[67] *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985) (holding that a party could not "recover $250 for use of a special process server, because 28 U.S.C. § 1920 (1982) contains no provision for such expenses.").

[68] Doc. No. 12-1 at 10/30/20.